IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

OLGA G. SCHAEFER,

       *Plaintiff,*

vs.                              No. CIV 06-0460 JB/ACT

MARIA THERESA ANTILL
and R.J. SCHAEFER REALTY &
INVESTMENTS, INC., and
PENSION PLANNING
CONSULTANTS, INC.

       *Defendants.*

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Plaintiff's Motion for Summary Judgment, filed December 6, 2006 (Doc. 28). The Court held a hearing on this motion on January 22, 2007. The primary issue is whether Plaintiff Olga G. Schaefer ("Mrs. Schaefer") is entitled to judgment as a matter of law, because there is no genuine issue of material fact, with regard to: (i) whether Mrs. Schaefer is the sole beneficiary of decedent Robert J. Schaefer's account(s) under the R.J. Schaefer Realty and Investments, Inc. ("Schaefer Realty") Profit Sharing Plan and Schaefer Realty Retirement Plan; (ii) whether Defendants Schaefer Realty and Maria Theresa Antill must distribute the assets of the Profit-Sharing Plan; and (iii) whether Schaefer Realty and Antill must provide an accounting of the assets in the Profit-Sharing Plan to Mrs. Schaefer. Because the Court concludes that there is no material factual dispute and Mrs. Schaefer is entitled to judgment as a matter of law, the Court will grant Mrs. Schaefer's summary judgment motion.

## FACTUAL BACKGROUND

Schaefer Realty adopted the Defined Benefit Pension Plan ("Retirement Plan") with an effective date of October 1, 1980.  See The Children of R.J. Schaefer, Deceased, Response to Plaintiff's Motion for Summary Judgment and Memorandum in Support, Exhibit B, Retirement Plan at 2, filed December 28, 2006 (Doc. 46)("Children's Response").  The most recent restatement of the Retirement Plan had an effective date of October 1, 2002.  See id.

Mr. Schaefer made an initial beneficiary designation under the Retirement Plan on February 17, 1999.  See Children's Response, Exhibit C, Designation of Beneficiary Form at 3-4.  Mr. Schaefer, in a letter to Mitchell Kawatomo, the Retirement Plan's third-party administrator, see Hearing Transcript at 12:7-11 (Smidt)(taken January 22, 2007),[1] made a second beneficiary designation on May 28, 2002, which granted the Retirement Plan's assets to his children, see Children's Response, Exhibit D, Letter From Mr. Schaefer to Mitchell Kawatomo at 1-2.  The Retirement Plan's Designation of Beneficiary Form states:

> I designate the following individual(s) or entity(ies) to be the primary beneficiary of any benefits payable under this Plan in the event of my death.  However, if I thereafter become legally married as defined by the Plan, this designation will automatically be revoked, and I will inform the Plan administrator of any change in my marital status.

See Children's Response, Exhibit D, Designation of Beneficiary Form at 2.

Schaefer Realty established the Profit-Sharing Plan with an effective date of January 1, 2003. See Complaint for Declaratory Judgment ¶ 10, at 3, filed June 1, 2006 (Doc. 1)("Complaint"); Defendant R.J. Schaefer Realty and Investments, Inc.'s Answer to Complaint for Declaratory Judgment ¶ 10, at 2, filed July 31, 2006 (Doc. 21)("Schaefer Realty's Answer").  Schaefer Realty is

---

[1] The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

the "plan administrator" of the Profit-Sharing Plan.  <u>See</u> Complaint ¶ 12, at 3; Schaefer Realty's

Answer ¶ 12, at 3. Antill is Schaefer Realty's acting president and is the trustee of the Profit-Sharing

Plan.  <u>See</u> Complaint ¶ 16, at 4; Schaefer Realty's Answer ¶ 16, at 3.  The Profit-Sharing Plan is an

employee pension benefit plan subject to the applicable provisions of the Employee Retirement

Income Security Act of 1974, as amended ("ERISA").  Complaint ¶ 11, at 3; Schaefer Realty's

Answer ¶ 11, at 3.  On September 29, 2003, Schaefer Realty signed a Certificate of Corporate

Resolution adopting the form of the amended Retirement Plan with an effective date of October 1,

2002.  <u>See</u> Children's Response, Exhibit E, Certificate of Corporate Resolution (signed September

29, 2003).  Schaefer Realty drafted but did not sign or adopt a Certificate of Corporate Resolution

resolving that the Retirement Plan be terminated as of January 1, 2004.  <u>See</u> Children's Response,

Exhibit F, Certificate of Corporate Resolution (unsigned).

Mr. and Mrs. Schaefer were married on January 5, 2004.  <u>See</u> Memorandum Brief in Support

of Plaintiff's Motion for Summary Judgment, Exhibit A, Affidavit of Olga G. Schaefer ¶ 2, at 1

(executed December 1, 2006), filed December 6, 2006 (Doc. 29)("Summary Judgement Memo").

Mrs. Schaefer had been previously married once before.  <u>See</u> Defendant R.J. Schaefer Realty and

Investments, Inc.'s Response in Opposition to Plaintiff's December 6, 2006 Motion for Summary

Judgment, Exhibit C, Deposition of Olga Schaefer at 12:8-15 (Mrs. Schaefer)(taken August 31,

2006), filed January 3, 2007 (Doc. 42)("Schaefer Realty's Response").  Mrs. Schaefer was previously

married in Kazakhstan. <u>See id.</u> Mrs. Schaefer divorced in Kazakhstan in 1979. <u>See id.</u> Mr. Schaefer

admitted that he had been married five times before marrying Mrs. Schaefer.  <u>See</u> Reply Brief in

Support of Plaintiff's Motion for Summary Judgment with Respect to Schaefer Realty's Response,

Exhibit 2, Petitioner's Information Sheet at 2, filed January 18, 2007 (Doc. 53)("Reply to Schaefer

Realty").   Antill alleges that Mr. Schaefer had been married seven times before marrying Mrs. Schaefer.  See Schaefer Realty's Response, Exhibit D, Affidavit of Maria Theresa Antill ¶ 7, at 2 (executed January 2, 2007).  Mr. Schaefer died on November 17, 2005.  See Complaint ¶ 4, at 2; Schaefer Realty's Answer ¶ 4, at 1-2.  At the time of Mr. Schaefer's death, he and Mrs. Schaefer were married.  See Summary Judgment Memo, Exhibit A, Olga G. Schaefer Affidavit ¶ 4, at 1.

Mr. Schaefer was a vested participant in the Profit-Sharing Plan.  See Complaint ¶ 19, at 4; Schaefer Realty's Answer ¶ 19, at 4.  Mrs. Schaefer alleges that Mr. Schaefer's vested account balance in the Profit-Sharing Plan, as of December 31, 2004, was $517, 282.30. See Complaint ¶ 19, at 4; Schaefer Realty's Answer ¶ 19, at 4.

Article VI of the Retirement Plan's Summary Plan Description and Article VI of the Profit-Sharing Plan's Summary Plan Description are nearly identical.  See Reply Brief in Support of Plaintiff's Motion for Summary Judgment with Respect to Children's Response, Exhibit K, Retirement Plan Summary Plan Description at 10-11, filed January 18, 2007 (Doc. 54)("Reply to Children"); Summary Judgment Memo, Exhibit 2, Profit-Sharing Plan Summary Plan Description at 10.  Article VI of the Retirement Plan's Summary Plan Descriptions states:

> IF YOU WISH TO DESIGNATE A BENEFICIARY OTHER THAN YOUR SPOUSE, YOUR SPOUSE MUST IRREVOCABLY CONSENT TO WAIVE ANY RIGHT TO THE DEATH BENEFIT.  YOUR SPOUSE'S CONSENT MUST BE IN WRITING, BE WITNESSED BY A NOTARY OR A PLAN REPRESENTATIVE, AND ACKNOWLEDGE THE SPECIFIC NONSPOUSE BENEFICIARY.
>
> * * * *
>
> If you are not married, then you may designate the beneficiary on a form to be supplied to you by the Administrator.
>
> In the event no valid designation of beneficiary exists, or if the beneficiary is

not alive at the time of your death, the death benefit will be paid in the following order of priority to:

> (a) Your surviving spouse;

> (b) Your children, including adopted children . . . .

Reply to Children, Exhibit K, Retirement Plan Summary Plan Description at 10-11.  Article VI of the

Profit-Sharing Plan's Summary Plan Descriptions states:

> If you are married at the time of your death, your spouse will be the beneficiary of the entire death benefit unless an election is made to change the beneficiary.  IF YOU WISH TO DESIGNATE A BENEFICIARY OTHER THAN YOUR SPOUSE, YOUR SPOUSE MUST IRREVOCABLY CONSENT TO WAIVE ANY RIGHT TO THE DEATH BENEFIT. YOUR SPOUSE'S CONSENT MUST BE IN WRITING, BE WITNESSED BY A NOTARY OR A PLAN REPRESENTATIVE, AND ACKNOWLEDGE THE SPECIFIC NONSPOUSE BENEFICIARY.

> \* \* \* \*

> In the event no valid designation of beneficiary exists, or if the beneficiary is not alive at the time of your death, the death benefit will be paid in the following order of priority to:

> (a) Your surviving spouse;

> (b) Your children, including adopted children . . . .

Summary Judgment Memo, Exhibit 2, Profit-Sharing Plan Summary Plan Description at 10.

If a complete rollover distribution into the Profit-Sharing Plan from the Retirement Plan was

made in 2003 or 2004, Mr. Schaefer was required to report such on his tax returns.  See Children's

Response at 4; Reply to Children at 3.  Mr. Schaefer's personal income tax returns for 2003 and 2004

do not indicate that a termination and distribution of Retirement Plan assets occurred.  See Children's

Reply, Exhibit G, Affidavit of Rebecca A. Voris ¶¶ 3-4, at 1-2.  Two different versions of the most

recent Form 5500, Annual Report for the Retirement Plan, reveal a discrepancy concerning whether

-5-

a final report based on the Retirement Plan's termination was indicated. <u>See</u> Children's Reply, Exhibit H-1, Form 5500; Children's Reply, Exhibit H-2, Form 5500. Mr. Schaefer did not sign the version indicating termination of the Retirement Plan. <u>See</u> Children's Reply, Exhibit H-2, Form 5500.

Mrs. Schaefer makes use of translators to understand English-language statements. <u>See</u> Schaefer Realty's Response, Exhibit C, Deposition of Olga Schaefer at 3:15-16; <u>id.</u> at 4:13-15; <u>id.</u> 5:4-5. Mrs. Schaefer's affidavit does not state that it was provided to her in her native language, Russian. <u>See</u> Summary Judgment Memo, Exhibit A, Olga G. Schaefer Affidavit. Mrs. Schaefer has admitted that she does not know what legal documents Mr. Schaefer kept, or where he kept them. <u>See</u> Schaefer Realty's Response, Exhibit C, Deposition of Olga Schaefer at 31:18-23; <u>id.</u> at 60:23-24.

## PROCEDURAL BACKGROUND

Mrs. Schaefer filed her Complaint for Declaratory Judgment on June 1, 2006. <u>See</u> Doc. 1. In it, she requests that the Court: (i) determine that she is the sole beneficiary of Mr. Schaefer's account(s) under the Profit-Sharing Plan; (ii) require Schaefer Realty, Antill, and Pension Planning Consultants, Inc. to provide a full accounting of the assets of Mr. Schaefer's Profit-Sharing Plan account(s) to Mrs. Schaefer; (iii) enjoin Schaefer Realty, Antill, and Pension Planning from making any distributions from Mr. Schaefer's Profit-Sharing Plan account(s) to anyone other than Mrs. Schaefer; (iv) order Schaefer Realty, Antill, and Pension Planning to distribute the assets of Mr. Schaefer's Profit-Sharing Plan account(s) to Mrs. Schaefer, in accordance with the terms of the Profit-Sharing Plan; and (v) award Mrs. Schaefer her reasonable attorneys' fees and costs incurred in bringing and prosecuting this action. <u>See</u> Complaint at 8-9.

On December 6, 2006, Mrs. Schaefer filed her summary judgment motion. <u>See</u> Doc. 28. In it, she submits that there is no genuine issue of material fact and that she is entitled to judgment as

a matter of law, because she is Mr. Schaefer's surviving spouse, and because the plain language of the Profit-Sharing Plan provides that, if a participant fails to name an alternate beneficiary, the participant's vested account balance is to be paid to the participant's surviving spouse. See Summary Judgment Memo at 8. Based upon those assertions, Mrs. Schaefer requests that the Court: (i) enter an order declaring that she is the sole beneficiary of Mr. Schaefer's Profit-Sharing Plan account(s); (ii) order Schaefer Realty to distribute the assets of Mr. Schaefer's Profit-Sharing Plan account(s) to her; and (iii) order Schaefer Realty to provide a full accounting of Mr. Schaefer's Profit-Sharing Plan assets. See id. at 10.

On December 14, 2006, the Court held an initial scheduling conference. At the conference, Mrs. Schaefer's counsel requested an early hearing on his client's pending summary judgment motion, because the parties had a mediation set on February 12, 2007 involving all of the disputes between the parties, including a state-probate proceeding. See Hearing Transcript at 5:19-22 (Smidt)(taken December 14, 2006); id. at 15:8-10 (Burris). Schaefer Realty and the children advocated for some discovery. See id. at 6:7-7:4 (Burris & Hamblin). The Court, in an effort to hear the pending motion as soon as possible, but allow some discovery, set the hearing for January 22, 2007 -- thirty-nine days or more than five weeks away. See id. at 13:20-14:8 (Court). The parties agreed that the setting of the hearing on the motion for summary judgment for January 22, 2007 was adequate in light of their concerns regarding mediation and discovery. See id. at 13:22-14:8 (Counsel).

Schaefer Realty responded to Mrs. Schaefer's summary judgment motion on January 3, 2007, contending: (i) that there are questions of fact concerning the legal validity of Mr. and Mrs. Schaefer's marriage, and, therefore, concerning whether Mrs. Schaefer is a surviving spouse for purposes of the Profit-Sharing Plan; (ii) that the fidelity of the affidavit Mrs. Schaefer attached to her

summary judgment motion should be questioned because she has a poor grasp of the English language and because it is not clear from the affidavit that it was presented to her for review in her native language; (iii) that Mr. Schaefer's children requested that Schaefer Realty distribute Mr. Schaefer's assets under the Profit-Sharing Plan to them; and (iv) that the Defendants have not conducted any discovery in the case, that such is needed to develop the facts sufficiently to respond to Mrs. Schaefer's motion, and that, pursuant to rule 56(f) of the Federal Rules of Civil Procedure, the Court should delay its ruling on the summary judgment motion so that Schaefer Realty has time to conduct necessary discovery.  <u>See</u> Schaefer Realty's Response at 3-7, 10-11.

On December 28, 2006, Mr. Schaefer's children responded to Mrs. Schaefer's summary judgment motion, arguing: (i) that Mr. Schaefer designated them as the beneficiaries of his Retirement Plan account(s); (ii) that it is unclear if the Retirement Plan, the Profit-Sharing Plan's predecessor, was ever terminated; and (iii)  that, because it appears that the Retirement Plan may be ongoing, it is unclear what, if any, assets were ever rolled over into the Profit-Sharing Plan.  <u>See</u> Children's Response at 3-4, 6-7.

In her January 18, 2007 reply to Schaefer Realty's response, Mrs. Schaefer argues: (i) that Schaefer Realty has not presented evidence that raises a material factual dispute regarding the legality of Mr. and Mrs. Schaefer's marriage; (ii) that, because no valid alternative beneficiary designation was made under the Profit-Sharing Plan, she is the sole beneficiary of Mr. Schaefer's Profit-Sharing Plan account(s); (iii) and that Schaefer Realty's counsel's rule 56(f) affidavit does not adequately specify what admissible evidence Schaefer Realty expects to locate through discovery or explain why facts essential to its opposition were unable to be presented in the time-frame for responding to the summary judgment motion.  <u>See</u> Reply to Schaefer Realty at 1, 7-8.  Mrs. Schaefer's January 18,

2007 reply to Mr. Schaefer's children's response asserts that the children's contentions concerning the previous beneficiary designation under the Retirement Plan and the rollover of funds to the Profit-Sharing Plan do not create a genuine issue of fact, because, as the beneficiary designation upon which the children rely was automatically revoked when Mr. and Mrs. Schaefer wed,  Mrs. Schaefer is the sole beneficiary of both the Retirement and Profit-Sharing Plans.  See Reply to Children at 1.

Schaefer Realty and Antill have not yet served any discovery in this case.  See Schaefer Realty's Response, Exhibit B, Affidavit of Eric R. Burris ¶ 6, at 2.  Mrs. Schaefer first served discovery on December 15, 2006.  See id. ¶ 5, at 1.  As of the date on which the Defendants' Responses to Mrs. Schaefer's summary judgment motions were due, the Defendants' answers to that discovery were not due.  See id.  No depositions have occurred in this case.  See id. ¶ 7, at 2.  No discovery schedule existed before the Rule 16 Conference that the Court held on December 14, 2006.  See id. ¶ 4, at 1.

## LAW REGARDING SUMMARY JUDGMENT

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The opposing party may not rest upon mere allegations and denials in the pleadings, but must set forth specific facts showing that there is a genuine issue for trial.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)(citing Fed. R. Civ. P. 56(e)).  An issue of fact is "genuine" if the evidence is significantly probative or more than merely colorable such that a jury could reasonably return a verdict for the non-moving party.  Id. at 249-50 (citations omitted).  Mere assertions or conjecture as to factual disputes are not enough

to survive summary judgment. See Branson v. Price River Coal Co., 853 F.2d 768, 771-72 (10th Cir. 1988). The court may consider only admissible evidence when ruling on a motion for summary judgment. See World of Sleep, Inc. v. La-Z-Boy Chair, Co., 756 F.2d 1467, 1474 (10th Cir. 1985)(citing Fed. R. Civ. P. 56(e)).

If a defendant seeks summary judgment, it has an "initial burden to show that there is an absence of evidence to support the nonmoving party's case." Munoz v. St. Mary-Corwin Hosp., 221 F.3d 1160, 1164 (10th Cir. 2000)(quoting Thomas v. IBM, 48 F.3d 478, 484 (10th Cir. 1995))(internal quotations omitted). Upon meeting that burden, the plaintiff must "identify specific facts that show the existence of a genuine issue of material fact." Id. (citations and internal quotations omitted). "The party opposing the motion must present sufficient evidence in specific, factual form for a jury to return a verdict in that party's favor." Id. (citations and internal quotations omitted). The mere existence of a scintilla of evidence in support of the plaintiff's position is not sufficient; there must be evidence on which the fact finder could reasonably find for the plaintiff. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 248. The non-moving party must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Celotex Corp. v. Catrett, 477 U.S. at 324 (internal quotations omitted). "In a response to a motion for summary judgment, a party cannot rest on ignorance of the facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial." Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Biester v. Midwest Health Servs., Inc., 77 F.3d 1264, 1266 (10 Cir.1996). A court must look at the record in the light most

favorable to the party opposing summary judgment.  See Smith v. Denver Pub. Sch. Bd., 41 F.3d 1516, at *3 (10th Cir. 1994).

## LAW REGARDING PLAN LANGUAGE
## AND BENEFICIARY DESIGNATION UNDER ERISA

Congress enacted ERISA to ensure the proper administration of employee benefit plans, including pension plans, both during the years of an employee's active service and after retirement. See Hamilton v. Wash. State Plumbing & Pipefitting Indus. Pension Plan, 433 F.3d 1091, 1095 (9th Cir. 2006).  "The principal object of ERISA is to protect plan participants and beneficiaries." Id.  The Retirement Equity Act of 1984 amended ERISA with respect to surviving spouses; it sought to ensure a stream of income to surviving spouses by requiring pension plans to provide automatic surviving spouse benefits.  The participant may waive the automatic surviving spouse benefit only if the spouse consents in writing to the designation of another beneficiary.  See id. at 1095-96.  Plan administrators must follow plans' governing documents and instruments to determine designated beneficiaries.  See Unicare Life & Health Ins. Co. v. Craig, 157 Fed. Appx. 787, 791 (6th Cir. 2005); 29 U.S.C. § 1104(a)(1)(D).

### 1.    Summary Plan Description and Plan Language.

Pursuant to 29 U.S.C. § 1022(a):

A summary plan description of any employee benefit plan shall be furnished to participants and beneficiaries as provided in section 1024(b) of this title.  The summary plan description shall include the information described in subsection (b) of this section, shall be written in a manner calculated to be understood by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan.  A summary of any material modification in the terms of the plan and any change in the information required under subsection (b) of this section shall be written in a manner calculated to be understood by the average plan participant . . . .

-11-

29 U.S.C. § 1022(a).  Under § 1022(b), the summary plan description must contain "the plan's requirements respecting eligibility for participation and benefits . . . [and] circumstances which may result in disqualification, ineligibility, or denial or loss of benefits . . . ."  29 U.S.C. § 1022(b).  If a court reviews plan documents and finds them unambiguous, they may be construed as a matter of law. See Hickman v. Gem Ins. Co., 299 F.3d 1208, 1212 (10th Cir. 2002).  ERISA plan language is to be given its common and ordinary meaning as a reasonable person in the position of the plan participant would have understood the words to mean.  See id. (quoting Blair v. Metro. Life Ins. Co., 974 F.2d 1219, 1221 (10th Cir. 1992)(stating that not to give language its ordinary meaning "would thwart the congressional purpose of ERISA's disclosure provisions which are designed to ensure that the individual participant knows exactly where he stands with respect to the plan")(internal quotations omitted).  The presence of ambiguity in a contract term must be determined as a matter of law; an ambiguous contract term is one "reasonably susceptible to more than one interpretation."  See Hickman v. Gem Ins. Co., 299 F.3d at 1212 (quoting Carland v. Metro. Life Ins. Co., 935 F.2d 1114, 1120 (10th Cir. 1991))(internal quotations omitted).

## 2.    Beneficiary Designation and Substantial Compliance.

In Peckham v. Gem State Mutual of Utah, 964 F.2d 1043 (10th Cir. 1992), the United States Court of Appeals for the Tenth Circuit held: "The doctrine of substantial compliance does not denigrate from an ERISA plan in a way that is significant enough to implicate the concerns underlying ERISA preemption. . . . Thus, ERISA does not preempt the state [or federal] common law doctrine[s] of substantial compliance."  Id. at 1052.  Citing Peckham v. Gem State Mutual of Utah, the United States Court of Appeals for the Fourth Circuit, in Phoenix Mut. Life Ins. Co. v. Adams, 30 F.3d 554 (4th Cir. 1994), adopted the ruling of a district court, which stated:

> [P]ursuant to federal common law, an insured substantially complies with the change
> of beneficiary provisions of an ERISA life insurance policy when the insured: [i]
> evidences his or her intent to make the change and [ii] attempts to effectuate the
> change by undertaking positive action which is for all practical purposes similar to the
> action required by the change of beneficiary provisions of the policy.

Phoenix Mut. Life Ins. Co. v. Adams, 30 F.3d at 564.  In adopting the lower court's ruling, the

Fourth Circuit held:

> The point of the doctrine, whether found in federal or state law, is to give effect to an
> insured's intent to comply when that intent is evident.  The insured decedent need not
> actually comply, but need only substantially comply with the change of beneficiary
> provisions of the policy to effectuate the desired change.  A federal common law of
> substantial compliance requiring that an insured intend to change his beneficiary and
> that he take positive action to effectuate that intent furthers the purposes of ERISA
> without compromising the integrity of policies issued by plan sponsors.
>
> * * * *
>
> Such a holding comports with ERISA's purpose to benefit insured employees and
> their beneficiaries.

Id. at 565 (emphasis in original).  See Metro. Life Ins. Co. v. Hall, 9 F. Supp. 2d. 560, 563 (D. Md.

1998)(relying on Phoenix Mut. Life Ins. Co. v. Adams to find that an ERISA plan beneficiary

designation was valid because the participant substantially complied with designation requirements);

Fortis Benefits Ins. Co. v. Johnson, 966 F. Supp. 987, 990 n.3 (D. Nev. 1997)(holding that the

beneficiary designation was valid because it substantially complied and, citing Peckham v. Gem State

Mut. of Utah and Phoenix Mut. Life Ins. Co. v. Adams, stating: "If this case had been brought by

either of the claimants, rather than the insurance company, the contract claims would be governed

by ERISA. . . . The result would be the same.  The substantial compliance doctrine in the change of

beneficiary context is part of the federal common law of ERISA.").

3.    <u>**Beneficiary Designation and Subsequent Marriage**</u>.

ERISA contains specific rules governing how a participant can designate a nonspousal beneficiary and how a spouse can consent to such a designation:

> (A)(i) the spouse of the participant consents in writing to such election, (ii) such election designates a beneficiary (or a form of benefits) which may not be changed without spousal consent (or the consent of the spouse expressly permits designations by the participant without any requirement of further consent by the spouse), and (iii) the spouse's consent acknowledges the effect of such election and is witnessed by a plan representative or a notary public, or (B) it is established to the satisfaction of a plan representative that the consent required under subparagraph (A) may not be obtained because there is no spouse, because the spouse cannot be located, or because of such other circumstances as the Secretary of the Treasury may by regulations prescribe. Any consent by a spouse (or establishment that the consent of a spouse may not be obtained) under the preceding sentence shall be effective only with respect to such spouse.

29 U.S.C. § 1055(c)(2). "The last sentence of this section contemplates the possibility of subsequent spouses and grants to them the same consent rights that are enjoyed by spouses at the moment of designation." <u>Boulet v. Fluor Corp.</u>, No. H-05-0105, 2005 WL 2860993, at *6 (S.D. Tex. October 31, 2005). Regulations that the Secretary of the Department of Treasury has promulgated provide that an ERISA plan participant's subsequent spouse is not bound by a previous spouse's consent to the designation of a nonspousal beneficiary. <u>See</u> <u>id.</u>; 26 C.F.R. §§ 1.401(a)-20, Q & A29 ("Q29: If a participants spouse consents . . . to the participant's waiver of survivor annuity form of benefit, is a subsequent spouse of the same participant bound by the consent? A29: No. A consent . . . by one spouse is binding only with respect to the consenting spouse."); 26 C.F.R. § 1.401(a)-20, Q & A 25(b)(3) ("If a participant divorces his spouse prior to the annuity starting date, any elections made while the participant was married to his former spouse remain valid, . . . unless the participant changes them or is remarried.). Thus, for a beneficiary designation to be valid upon a participant's subsequent

remarriage, the new spouse must consent to the designation in accordance with ERISA. See Hurwitz v. Sher, 982 F.2d 778, 779-83 (2d Cir. 1992)(holding that a father's ERISA plan designation to his son did not survive the father's subsequent marriage, because the new spouse did not waive her rights under ERISA and the plan and consent to the designation); Boulet v. Fluor Corp., 2005 WL 2860993, at *6 (finding that new spouse obtained the right to consent to participant's previous beneficiary designation upon marriage).

## LAW REGARDING RULE 56(f)

Rule 56(f) provides:

> Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Fed. R. Civ. P. 56(f). When a party files an affidavit and moves for additional discovery time under rule 56(f), the party invokes the court's discretion. See Jensen v. Redevelopment Agency of Sandy City, 998 F.2d 1550, 1553-54 (10th Cir. 1993). "Unless dilatory or lacking in merit," a party's 56(f) application "should be liberally treated." Id. at 1554 (internal quotations and citations omitted). "The general principle of Rule 56(f) is that summary judgment should be refused where the nonmoving party has not had the opportunity to discover information that is essential to [its] opposition." Price v. W. Res., Inc., 232 F.3d 779, 783 (10th Cir. 2000). Rule 56(f) does not require, however, that summary judgment not be entered until discovery is complete. See id. at 784.

"Rule 56(f) is not a license for a fishing expedition. . . ." Lewis v. Ft. Collins, 903 F.2d 752, 758 (10th Cir. 1990). To invoke rule 56(f) the party filing the affidavit must state with specificity how the desired time would allow it to meet its burden in opposing summary judgment. See Jensen

v. Redevelopment Agency of Sandy City, 998 F.2d at 1554.  Rule 56(f) may not be invoked based

solely upon the assertion that discovery is incomplete or that specific facts necessary to oppose

summary judgment are unavailable.  See id.  Moreover, while the summary judgment movant's

exclusive control of information weighs heavily in favor of relief under 56(f), see Price v. W. Res.,

Inc., 232 F.3d at 783, merely asserting such is insufficient to justify denial of summary judgment, see

Jensen v. Redevelopment Agency of Sandy City, 998 F.2d at 1554.  Furthermore, "if the party filing

the Rule 56(f) affidavit has been dilatory, or the information sought is either irrelevant to the summary

judgment motion or merely cumulative, no extension will be granted."  Jensen v. Redevelopment

Agency of Sandy City, 998 F.2d at 1554 (denying a 56(f) request stating "the record reflect[ed] that

plaintiffs were dilatory in pursuing discovery prior to the filing of their 56(f) affidavit")  See Johnson

v. Holmes, 377 F. Supp. 2d 1039, 1044-45 (D.N.M. 2004)(Browning, J.)(denying a 56(f) request

where plaintiff did not explain why, during the discovery period that the court allowed, he did not

obtain the discovery sought in his motion).   The Tenth Circuit has summarized rule 56(f)'s

requirements as follows:

> A prerequisite to granting relief pursuant to Rule 56(f) is an affidavit furnished by the
> nonmovant. Although the affidavit need not contain evidentiary facts, it must explain
> why facts precluding summary judgment cannot be presented.  This includes
> identifying the probable facts not available and what steps have been taken to obtain
> these facts.  In this circuit, the nonmovant also must explain[, with specificity,] how
> additional time will enable him to rebut movant's allegations of no genuine issue of
> fact.

Price v. W. Res., Inc., 232 F.3d at 783 (internal quotations and citations omitted).  See Douglass v.

United Auto Workers Local Union 31, 188 Fed. Appx. 656, 658 (10th Cir. 2006)(stating that the

affidavit must state how the additional time would enable the party to meet its burden "with

specificity").  A rule 56(f) affidavit must state, with specificity, what additional discovery is believed

necessary.  See Burke v. Utah Transit Auth. and Local 382, 462 F.3d 1253, 1264 (10th Cir. 2006);

Chavez v. Perry, 142 Fed. Appx. 325, 334 (10th Cir. 2005)("To resist summary judgment on this

basis (56(f)), a party must specifically identify what facts it seeks to discover and show how those

facts would materially aid its case on the dispositive issues.").

## LAW REGARDING RULE 15(b)

Rule 15(b) of the Federal Rules of Civil Procedure was promulgated to provide the maximum

opportunity for claims to be decided on their merits, rather than on procedural niceties.  See Hardin

v. Manitowoc-Forsythe Corp., 691 F.2d 449, 456 (10th Cir. 1982).  Rule 15(b), in relevant part,

states:

> When issues not raised by the pleadings are tried by express or implied consent of the
> parties, they shall be treated in all respects as if they had been raised in the pleadings.
> Such amendment of the pleadings as may be necessary to cause them to conform to
> the evidence and to raise these issues may be made upon motion of any party at any
> time, even after judgment; but failure so to amend does not affect the result of the trial
> of these issues.  If evidence is objected to . . . on the ground that it is not within the
> issues made by the pleadings, the court may allow the pleadings to be amended and
> shall do so freely when the presentation of the merits of the action will be subserved
> thereby and the objecting party fails to satisfy the court that the admission of such
> evidence would prejudice the party in maintaining the party's action or defense upon
> the merits.

Fed. R. Civ. P. 15(b).  "Thus, when evidence is presented on an issue beyond the scope of the pretrial

order, Rule 15(b) may be invoked to effect an amendment of the pretrial order."  Hardin v.

Manitowoc-Forsythe Corp., 691 F.2d at 456.  The Tenth Circuit has ruled that rule 15(b) is applicable

to summary judgment motions.  See Smith v. Denver Pub. Sch. Bd., 41 F.3d at *5 (stating that, due

to rule 15(f), the fact that plaintiff did not allege discriminatory and retaliatory conduct in her

complaint does not preclude the district court from dismissing those issues on summary judgment);

Ahmad v. Furlong, 435 F.3d 1196, 1200-04 (10th Cir. 2006)(allowing an affirmative defense to be

raised for the first time in a summary judgment motion and analogizing the situation to one in which

rule 15(b) would be operative).[2]

Deciding whether the parties have impliedly consented to try an issue is within the district

court's discretion; a district court's determination with respect to such will not be disturbed absent

a showing of abuse of discretion. See Smith v. Denver Pub. Sch. Bd., 41 F.3d at *5.  "When an issue,

not appearing in the pleadings, is raised without objection at trial, it is deemed to have been tried by

the implied consent of the parties."  Id.  In determining whether issues have been tried by implied

consent, a court should also consider whether the opposing party had adequate notice and whether

they had a fair opportunity to defend.  See id.  "The test of consent is whether the opposing party had

---

[2] In Ahmad v. Furlong, the Tenth Circuit noted:

> We have applied Rule 15(b) to a defense raised in a motion for summary judgment on the eve of trial. See Suiter v. Mitchell Motor Coach Sales, Inc., 151 F.3d 1275, 1279-80 (10th Cir.1998).  But there is a split among the circuits (and within some circuits) on whether the rule applies at the summary-judgment stage. Compare Cruz v. Coach Stores, Inc., 202 F.3d 560, 569 (2d Cir. 2000)(applying Rule 15(b) at summary-judgment stage); United States ex rel. Canion v. Randall & Blake, 817 F.2d 1188, 1193 (5th Cir. 1987)(same); Smith v. Transworld Sys., Inc., 953 F.2d 1025, 1030 (6th Cir. 1992)(same); Walton v. Jennings Cmty. Hosp. Inc., 875 F.2d 1317, 1320 n. 3 (7th Cir. 1989)(same); Jackson v. Hayakawa, 605 F.2d 1121, 1129 (9th Cir. 1979)(same); and Kulkarni v. Alexander, 662 F.2d 758, 762 (D.C. Cir. 1978)(Rule 15(b)'s "general principle" has been applied at summary judgment stage), with Crawford v. Gould, 56 F.3d 1162, 1168-69 (9th Cir. 1995)("The present case did not go to trial; it was decided on motions for summary judgment. Therefore, the situation which Rule 15(b) addresses simply did not arise in the present case."); Blue Cross Blue Shield v. Weitz, 913 F.2d 1544, 1550 (11th Cir. 1990)(Rule 15(b) is "inapposite" when case decided on summary judgment); Harris v. Secretary, U.S. Dep't of Veterans Affairs, 126 F.3d 339, 344 n.3 (D.C. Cir. 1997)(Rule 15(b) does not apply when case does not reach trial); and Indep. Petroleum Ass'n. of Am. v. Babbitt, 235 F.3d 588, 596 (D.C. Cir. 2001) ("It is an open question whether the Federal Rules permit parties to impliedly consent to 'try' issues not raised in their pleadings through summary judgment motions.").

Ahmad v. Furlong, 435 F.3d at 1203 n.1.

a fair opportunity to defend and whether he could have presented additional evidence had he known sooner the substance of the amendment."  Hardin v. Manitowoc-Forsythe Corp., 691 F.2d at 456. "The general rule is that a party cannot subsequently challenge an issue which is actually litigated if he has had actual notice and adequate opportunity to defend."  Branding Iron Club v. Riggs, 207 F.2d 720, 724 (10th Cir. 1953).  Even where there is no consent, and objection is made that evidence is outside the scope of the pretrial order, amendment may still be allowed unless the objecting party satisfies the court that amendment would prejudice it.  See Hardin v. Manitowoc-Forsythe Corp., 691 F.2d at 457.  "In the absence of a showing of prejudice, the objecting party's only remedy is a continuance to enable him to meet the new evidence."  Id.

## ANALYSIS

Schaefer Realty and Mr. Schaefer's children have not demonstrated a genuine of issue of material fact with regard to the validity of Mr. and Mrs. Schaefer's marriage.  Pursuant to the terms of the Retirement and Profit-Sharing Plans, Mrs. Schaefer is the sole beneficiary of Mr. Schaefer's account(s).  Accordingly, the Court will grant Mrs. Schaefer's motion for summary judgment.

As a preliminary matter, the Court notes that it does not believe that there is an issue with the fidelity of the affidavit of Mrs. Schaefer attached to the summary judgment motion.  Mrs. Schaefer, after having been duly sworn, signed the affidavit, certifying that she had personal knowledge of the facts and events set forth therein.  See Summary Judgment Memo, Exhibit A, Affidavit of Olga G. Schaefer ¶ 1, at 1.  Moreover, Larrissa Gusseva, Mrs. Schaefer's daughter, represents that she is fluent in both English and Russian, and that she translated Mrs. Schaefer's affidavit before her mother indicated that she understood and believed to be true and accurate all the statements contained in the affidavit, and signed the affidavit.  See Reply to Schaefer Realty, Exhibit D, Affidavit of Larrissa

-19-

Gusseva ¶¶ 3-4, at 1-2 (executed January 17, 2007). Based upon the foregoing, Schaefer Realty's concerns about Mrs. Schaefer's facility with the English language are not sufficient to render Mrs. Schaefer's affidavit inadmissible or beyond the consideration of the Court. If Schaefer Realty is attacking her competency, the Court concludes, based on the record before it, that she is competent; if Schaefer Realty is attacking her credibility or the weight to be given to the evidence, it is not appropriate for the Court, at this stage of the proceeding, to make such a determination.

I.     **THERE IS NO GENUINE ISSUE OF MATERIAL FACT REGARDING THE LEGAL VALIDITY OF MR. AND MRS. SCHAEFER'S MARRIAGE.**

The Court does not believe that the Defendants have demonstrated that there is a material factual dispute concerning the validity of Mr. and Mrs. Schaefer's marriage or, relatedly, Mrs. Schaefer's position as the surviving spouse for purposes of the Retirement and Profit-Sharing Plans. The Court is satisfied that there is no genuine factual dispute regarding Mrs. Schaefer's legal ability to enter into a valid marriage with Mr. Schaefer. Mrs. Schaefer testified that she was married once before marrying Mr. Schaefer and that she divorced her husband from that marriage before marrying Mr. Schaefer.[3] See Schaefer Realty's Response, Exhibit C, Deposition of Olga Schaefer at 12:8-15. Given that the Defendants have not presented any contradictory evidence, the Court finds that there is no issue of material fact with respect to whether Mrs. Schaefer was legally able to enter into a marriage when she wed Mr. Schaefer. Speculation about the validity of her Kazakh divorce is not

---

[3] In support of her testimony concerning her previous divorce, Mrs. Schaefer attached a copy of her Kazakh Divorce Certificate to her reply to Schaefer Realty's response. See Reply to Schaefer Realty, Exhibit D, Divorce Certificate (dated August 28, 1979). At the hearing, the Defendants objected to the Kazakh government's translation of the Divorce Certificate, stating that questions surrounding its origin created hearsay concerns. See Hearing Transcript at 21:23-22:13 (Burris)(taken January 22, 2007). Based on that objection, the Court did not consider the Divorce Certificate in reaching its decision.

enough to create a genuine dispute.

With respect to Mr. Schaefer's ability to enter into a legally valid marriage with Mrs. Schaefer, the Court again finds that there is no material factual dispute. Under penalty of perjury, Mr. Schaefer stated that he had been married five times and divorced five times before marrying Mrs. Schaefer. See Reply to Schaefer Realty, Exhibit D, Petitioner's Information Sheet at 2-3. Mr. Schaefer also stated, under penalty of perjury, that he was legally able to marry Mrs. Schaefer before they wed. See id. While Antill represents that Mr. Schaefer was married seven times rather than five, see Schaefer Realty's Response, Exhibit D, Affidavit of Maria Theresa Antill ¶ 7, at 2, the Court is not convinced that representation raises a disputed issue of material fact. Accepting that Mr. Schaefer was married seven times, as the Court must, the Court finds that more evidence is needed to support the conclusion that a material factual dispute exists with regard to Mr. Schaefer's ability to enter into a valid marriage with Mrs. Schaefer. That Mr. Schaefer was married seven times, instead of five, does not, by itself, call into question Mr. Schaefer's ability to legally marry Mrs. Schaefer or the legality of the union between Mr. and Mrs. Schaefer. The Defendants' evidence appears to be the scintilla or metaphysical concern that should not preclude summary judgment. Thus, while the number of times Mr. Schaefer was married is a disputed fact, the Court does not believe that it is a disputed fact that is material to the disposition of the case. The Court concludes, therefore, that there is no genuine issue of material fact concerning the legal validity of the marriage between Mr. and Mrs. Schaefer, and that there is no genuine issue of material fact regarding Mrs. Schaefer's status  as the surviving spouse for purposes of the Retirement and Profit-Sharing Plans.

**II.    THERE IS NO GENUINE ISSUE OF MATERIAL FACT REGARDING MRS. SCHAEFER BEING THE SOLE BENEFICIARY OF THE PROFIT-SHARING PLAN OR CONCERNING THE VALUE OF THE ASSETS ROLLED OVER FROM THE RETIREMENT PLAN INTO THE PROFIT-SHARING PLAN.**

The Defendants contend that there are material factual disputes concerning whether the Retirement Plan was ever terminated in favor of the Profit-Sharing Plan, and, because it appears that the Retirement Plan may be ongoing, what assets, if any, were ever rolled over into the Profit-Sharing Plan. See Children's Response at 3-4, 6-7. The Defendants also argue that there is a material factual dispute regarding the value of the assets Mrs. Schaefer may be entitled to under the Profit-Sharing Plan, because Mr. Schaefer designated the children as the beneficiaries of the Retirement Plan. Accepting that there is ambiguity concerning the termination status of the Retirement Plan and that, pursuant to the federal common-law doctrine of substantial compliance, see Phoenix Mut. Life Ins. Co. v. Adams, 30 F.3d at 564, Mr. Schaefer's letter to Kawatomo validly designated the children as beneficiaries of the Retirement Plan in 2002, the Court does not believe that there are material factual disputes that prevent it from granting Mrs. Schaefer judgment as a matter of law. According to the plain language of the Retirement and Profit-Sharing Plans, which the Defendants have not given the Court reason to question, Mrs. Schaefer, despite Mr. Schaefer having designated the children as beneficiaries in 2002, is the sole beneficiary of Mr. Schaefer's account(s).

Based on the ordinary meaning of the terms of the Retirement and Profit-Sharing Plans, see Hickman v. Gem Ins. Co., 299 F.3d at 1212 (stating that ERISA plan language is to be given its common and ordinary meaning as a reasonable person in the position of the plan participant would have understood it), Mrs. Schaefer, as Mr. Schaefer's surviving spouse, is the sole beneficiary of Mr. Schaefer's account(s), see id. (maintaining that unambiguous plan language may be construed as a

matter of law).  Assuming that assets were never transferred from the Retirement Plan to the Profit-Sharing Plan and that Mr. Schaefer designated the children as beneficiaries of the Retirement Plan, the terms of the Retirement Plan make it clear that any designation to the children was revoked when Mr. and Mrs. Schaefer wed, and that Mrs. Schaefer is entitled to whatever remains in Mr. Schaefer's Retirement Plan account(s).  The Retirement Plan's Summary Plan Description states: "If you are not married, then you may designate the beneficiary on a form to be supplied to you by the Administrator."  Reply to Children, Exhibit K, Retirement Plan Summary Plan Description at 10.  The Retirement Plan's Designation of Beneficiary Form, "the form to be supplied," states:

> I designate the following individual(s) or entity(ies) to be the primary beneficiary of any benefits payable under this Plan in the event of my death.  However, if I thereafter become legally married as defined by the Plan, this designation will automatically be revoked, and I will inform the Plan administrator of any change in my marital status.

See Children's Response, Exhibit D, Designation of Beneficiary Form at 2.  In accordance with that language, any beneficiary designation Mr. Schaefer had made before marrying Mrs. Schaefer was revoked as of the date of their marriage.[4]  That language served to place Mr. Schaefer on notice that any beneficiary designations he made before remarriage would require the consent of his new spouse, pursuant to ERISA and the terms of the Defined Benefit Prototype Plan and Trust, to be valid.[5]  See

---

[4] The Court notes that Mr. Schaefer's letter to Kawatomo does not purport to alter the Retirement Plan's Designation of Beneficiary Form or its terms; rather, it requests that the information appearing on that form be updated to reflect subsequent changes in address and percentage distribution.  Children's Response, Exhibit D, Letter from Mr. Schaefer to Mitchell Kawatomo at 1-2.  The letter states: "Please make the following changes if we have not already done so; addresses and percentages of interest. . . . Please send me a copy after the corrections have been made."  Id.

[5] ERISA's spousal consent requirements are incorporated in the Defined Benefit Prototype Plan and Trust's terms relating to the Death Benefit and Survivor Annuity, see Reply to Children, Exhibit J, Defined Benefit Prototype Plan and Trust at § 5.8(i), at 32-33, § 5.10(a)(2), at 35, § 5.11, at 39, and the Retirement Plan's Summary Plan Description, see Reply to Children, Exhibit K,

Hurwitz v. Sher, 982 F.2d at 779-83; Boulet v. Fluor Corp., 2005 WL 2860993, at *6.  Pursuant to

the Retirement Plan, once the designation to the children was revoked, because Mrs. Schaefer did not

validly consent to any alternative beneficiary designations, Article VI of the Retirement Plan's

Summary Plan Description became operable; it provides:

> IF YOU WISH TO DESIGNATE A BENEFICIARY OTHER THAN YOUR
> SPOUSE, YOUR SPOUSE MUST IRREVOCABLY CONSENT TO WAIVE ANY
> RIGHT TO THE DEATH BENEFIT.  YOUR SPOUSE'S CONSENT MUST BE
> IN WRITING, BE WITNESSED BY A NOTARY OR A PLAN
> REPRESENTATIVE, AND ACKNOWLEDGE THE SPECIFIC NONSPOUSE
> BENEFICIARY.
>
> * * * *
>
> In the event no valid designation of beneficiary exists, or if the beneficiary is not alive
> at the time of your death, the death benefit will be paid in the following order of
> priority to:
>
> > (a) Your surviving spouse;
> >
> > (b) Your children, including adopted children . . . .

Reply to Children, Exhibit K, Retirement Plan Summary Plan Description at 10-11.  Given the

language of Article VI of the Retirement Plan's Summary Plan Description, if Mr. Schaefer made no

beneficiary designation to which Mrs. Schaefer consented after their marriage, Mrs. Schaefer is the

sole beneficiary of the Retirement Plan account(s).  The Defendants have not submitted any evidence

creating an issue of material fact regarding whether Mr. and Mrs. Schaefer designated alternate

beneficiaries under the Retirement Plan.

  To the extent that the Profit-Sharing Plan is separable from the Retirement Plan, the

Defendants have presented no specific factual evidence suggesting that Mr. and Mrs. Schaefer

---

Retirement Plan Summary Plan Description at 10-11.

-24-

designated alternate beneficiaries under the Profit-Sharing Plan after their marriage. The Court

believes, therefore, that Article VI of the Profit-Sharing Plan's Summary Plan Description is

controlling; it states:

> If you are married at the time of your death, your spouse will be the beneficiary of the
> entire death benefit unless an election is made to change the beneficiary. IF YOU
> WISH TO DESIGNATE A BENEFICIARY OTHER THAN YOUR SPOUSE,
> YOUR SPOUSE MUST IRREVOCABLY CONSENT TO WAIVE ANY RIGHT
> TO THE DEATH BENEFIT. YOUR SPOUSE'S CONSENT MUST BE IN
> WRITING, BE WITNESSED BY A NOTARY OR A PLAN REPRESENTATIVE,
> AND ACKNOWLEDGE THE SPECIFIC NONSPOUSE BENEFICIARY.
>
> * * * *
>
> In the event no valid designation of beneficiary exists, or if the beneficiary is not alive
> at the time of your death, the death benefit will be paid in the following order of
> priority to:
>
> > (a) Your surviving spouse;
> >
> > (b) Your children, including adopted children . . . .

Summary Judgment Memo, Exhibit 2, Profit-Sharing Plan Summary Plan Description at 10. Tracking

the language of Article VI of the Profit-Sharing Plan's Summary Plan Description, the Court believes

that, according to its terms, Mrs. Schaefer is the sole beneficiary of the Profit-Sharing Plan.

Under the terms of the Retirement and Profit-Sharing Plans, when they are given their

common and ordinary meaning, Mrs. Schaefer, as Mr. Schaefer's surviving spouse, is the sole

beneficiary of Mr. Schaefer's account(s). The specific and unambiguous language of the Retirement

Plan's Beneficiary Designation Form and Article VI of both the Retirement and Profit-Sharing Plans

defines Mrs. Schaefer as the sole beneficiary of the Plans. Because Mrs. Schaefer is the sole

beneficiary under either Plan, the Court does not believe that the factual disputes concerning the

Retirement Plan's termination, Mr. Schaefer's pre-marriage beneficiary designations, or which assets

may or may not have been rolled over into the Profit-Sharing Plan are material or that they prevent the Court from granting Mrs. Schaefer judgment as a matter of law.

### III.   THE COURT WILL NOT APPLY 56(f) TO PROVIDE THE DEFENDANTS WITH ADDITIONAL TIME FOR DISCOVERY.

While rule 56(f) requests should be liberally treated, they should not be granted if the party was dilatory and unless affidavits submitted in support specifically state what additional discovery is believed necessary and explain why, during the time period available for discovery, the necessary discovery was not obtained. Because the Court believes that Schaefer Realty did not use the discovery time it was given and that Schaefer Realty's rule 56(f) affidavit does not state, with specificity, what additional discovery is sought, or why, during the time period allowed for discovery, it was not obtained, the Court will deny Schaefer Realty's rule 56(f) request.

Schaefer Realty represents that neither it nor Mr. Schaefer's children have served any discovery in this case. See Schaefer Realty's Response, Exhibit B, Affidavit of Eric R. Burris ¶ 7, at 2 (executed January 2, 2007). The Court expressly stated at the December 14, 2006 Initial Scheduling Conference that it was scheduling the summary judgment hearing on January 22, 2007 so that the parties would have an opportunity to engage in discovery and locate relevant evidence, see Hearing Transcript at 13:24-14:12 (Court). Schaefer Realty did not avail itself of that opportunity. By comparison, the Court notes that Mrs. Schaefer served discovery requests on Schaefer Realty and Mr. Schaefer's children on December 15, 2006. Moreover, the Court believes that Schaefer Realty was on notice that it may need to locate several of the documents of the type it now seeks additional time to discover as of the time Mrs. Schaefer's complaint was filed, June 1, 2006, and certainly as of the time Mrs. Schaefer's summary judgment motion was filed, December

6, 2006.  Further, with respect to Schaefer Realty's apparent dilatoriness, the Court notes that Schaefer Realty's affidavit does not attempt to explain why the discovery now deemed necessary was not obtained or even sought via discovery request during the time period that the Court provided for discovery before the summary judgment hearing.  See Schaefer Realty's Response, Exhibit B, Affidavit of Eric R. Burris.

The Court also believes that Schaefer Realty's rule 56(f) affidavit lacks requisite specificity. For example, Schaefer Realty's rule 56(f) affidavit states that discovery needs to be obtained on "issues of [] the full scope of relevant documents and other materials held by Plaintiff, . . . relevant documents and other materials from Mr. Schaefer's former CPA, . . . and [] deposition testimony from Plaintiff . . . ."  Schaefer Realty's Response, Exhibit B, Affidavit of Eric R. Burris ¶ 10, at 2. The Court believes that such statements describing necessary discovery are not specific enough to warrant rule 56(f)'s application.  These statements do not specify particular documents or testimony. The Court notes that "[r]ule 56(f) is not a license for a fishing expedition," Lewis v. Ft. Collins, 903 F.2d at 758, and that rule 56(f) does not require discovery be complete before summary judgment is entered, see Price v. W. Res., Inc., 232 F.3d at 784.

Because the Court finds that Schaefer Realty did not use the time it was given to conduct discovery, and because the Court finds that Schaefer Realty's affidavit in support of its rule 56(f) request for additional time for discovery does not explain why it did not obtain the discovery sought in the time provided before the summary judgment hearing and lacks specificity, the Court will deny the rule 56(f) request.  The Court is concerned that the Defendants, realizing the relative weakness of their position, seek delay until the scheduled mediation so that they can mitigate their losses in settlement.  The Court has an obligation to grant summary judgment, without undue delay, when the

record indicates a judgment is appropriate.  The Court believes that the record before it demonstrates that summary judgment is appropriate and that Schaefer Realty has not shown that delay and more discovery will likely change the result.

**IV.    PURSUANT TO RULE 15(b) THE COURT MAY DETERMINE MRS. SCHAEFER'S STATUS UNDER THE RETIREMENT PLAN.**

While the issue of Mrs. Schaefer's status under the Retirement Plan was not raised in the pleadings, the Court believes that, because the parties submitted sufficient evidence in conjunction with the summary judgment motion for it to decide that issue, rule 15(b) permits the Court to pass judgment on Mrs. Schaefer's Retirement Plan status.

The Court notes that the Defendants raised the issue of Mrs. Schaefer's status under the Retirement Plan in Mr. Schaefer's children's response to the summary judgment motion.  See Children's Response at 3-4, 6-7.  The children submitted that genuine issues of material fact existed with respect to whether the Retirement Plan was ongoing and which assets had been rolled over from the Retirement Plan to the Profit-Sharing Plan.  See id.  The children's response included the Retirement Plan and the Retirement Plan Designation of Beneficiary Form.  See id., Exhibit B, Defined Benefit Pension Plan; id., Exhibit C, Designation of Beneficiary Form.  The Court also notes that, while the Defendants did note that Mrs. Schaefer first addressed the issue of her status under the Retirement Plan in her reply to Mr. Schaefer's children's response, and that, therefore, that issue may not properly be before the Court, the Defendants did not specifically state that they objected to Mrs. Schaefer's inclusion of evidence or argument concerning that topic.  See Hearing Transcript at 16:13-17:24 (Burris)(taken January 22, 2007).  As such, the Court finds that the parties impliedly consented to the inclusion of the issue of Mrs. Schaefer's status under the Retirement Plan and will,

-28-

accordingly, treat that issue as if it had been raised in the pleadings.  The Court notes further that the Defendants, because they effectively raised the issue in their responses, had adequate notice of the issue and a fair opportunity to defend their position with respect to it.  See Branding Iron Club v. Riggs, 207 F.2d at 724 ("The general rule is that a party cannot subsequently challenge an issue which is actually litigated if he has had actual notice and adequate opportunity to defend.").  The Court believes that, even if the Defendants did not impliedly consent to its inclusion, the issue of Mrs. Schaefer's status under the Retirement Plan is properly before the Court, because the Defendants had adequate notice of the issue and a fair opportunity to defend their position on it, and did not demonstrate that its inclusion would prejudice them.  See Hardin v. Manitowoc-Forsythe Corp., 691 F.2d at 457 (stating that even where there is no consent, and objection is made that evidence is outside the scope of the pretrial order, amendment may still be allowed unless the objecting party satisfies the court that amendment would prejudice it).

Because the Court finds that there are no material factual disputes regarding Mr. and Mrs. Schaefer's marriage and Mrs. Schaefer's position as Mr. Schaefer's surviving spouse, because the Court finds that there are no material factual disputes concerning Mrs. Schaefer's status as sole beneficiary under both the Retirement Plan and the Profit-Sharing Plan, because the Court finds that the Defendants' rule 56(f) request for additional time for discovery should not be granted, and because the Court finds that rule 15(b) allows it to decide the issue of Mrs. Schaefer's status under the Retirement Plan, the Court will grant Mrs. Schaefer's summary judgment motion.

**IT IS ORDERED** that the Plaintiff's Motion for Summary Judgment is granted.  The Court declares that Mrs. Schaefer is the sole beneficiary under the Plans, orders Schaefer Realty and Antill to distribute the assets under the Plans to Mrs. Schaefer, and commands Schaefer Realty to provide

-29-

a full accounting of the Plans to Mrs. Schaefer.[6]

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Thomas Smidt, III
Thomas Smidt, II
Tax, Estate & Business Law,NA, LLC
Albuquerque, New Mexico

      *Attorneys for the Plaintiff*

Randolph L. Hamblin
Hurley, Toevs, Styles, Hamblin & Panter, PA
Albuquerque, New Mexico

      *Attorney for Defendant Maria Theresa Antill*

Adam E. Lyons
Eric R. Burris
Nancy A Strelau
Brownstein Hyatt Farber Schreck, PC
Albuquerque, New Mexico

      *Attorneys for Defendant R.J. Schaefer Realty & Investments, Inc.*

_____

[6] The Defendants request attorney's fees and costs, but provide no basis for such an award. Under the American rule, fees and costs are not shifted unless some rule or statute creates an exception. The Defendants point to no exception, and none appears available.

-30-